IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALAN HEADMAN,<br><br>Plaintiff,<br><br>v.<br><br>RUSSELL MARION NELSON,<br><br>Defendants. | **REPORT AND RECOMMENDATION TO GRANT MOTION TO DISMISS (DOC. NO. 11)**<br><br>Case No. 2:20-cv-00115-CW-DAO<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Daphne A. Oberg |

Pro se Plaintiff Alan Headman filed this action against Defendant Russell Marion Nelson. Mr. Nelson filed a Motion to Dismiss (Doc. No. 11) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having reviewed the parties' written briefs[1] and Mr. Headman's Complaint (Doc. No. 1), the undersigned[2] RECOMMENDS the district judge GRANT the motion and DISMISS Mr. Headman's claims against Mr. Nelson with prejudice.

## BACKGROUND

Mr. Headman brought this action against Mr. Nelson, as President of the Church of Jesus Christ of Latter-Day Saints ("the Church") after a Utah state court denied his request for modification of his alimony obligation in his divorce case. (*See* Compl. ¶ 7, Doc. No. 1.) Mr. Headman asserts "the legal forum in Utah [was] inadequate in granting him due process over marital assets including his requests for temporary adjustment of his alimony obligation

---

[1] Pursuant to Local Rule DUCivR 7-1(f), the court finds oral argument unnecessary and makes its recommendation on the motion based on the parties' written memoranda.

[2] On February 26, 2020, the district judge referred this case to Magistrate Judge Furse under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 7.) On May 15, 2020, this case was reassigned to the undersigned magistrate judge. (Doc. No. 22.)

1

following his documented approximate 50% decrease of income and due process over facts and laws supporting his claims of fault and fraud upon the court." (*Id.*) Mr. Headman alleges the Utah state courts "are not respecting his God-given nature of Life, Liberty, or Property and have been forcefully coercing [him] into alimony obligations that he did not concede to within a prenuptial agreement ignoring Statute of Fraud provisions." (*Id.* ¶ 29.)

Mr. Headman further alleges a "lack of separation of church and state within Utah's Judicial System" which he claims "render[s] the state forum 'inadequate' in providing [a] Constitutionally compliant administration of justice." (*Id.* ¶ 23.) He claims the Utah state-court system is "jointly controlled by the Defendant," (*id.* ¶ 31), because "[a]t least three of the current Supreme Court Justices in Utah belong to the LDS Church" and "[a] former Utah Supreme Court Justice Dallin H. Oaks serves within the LDS Church's Quorum of the Twelve Apostles," (*id.* at 2).

Mr. Headman also challenges a Church "temple recommend" question, which he claims requires members to "certify that they are 'current in meeting' obligations to a 'former spouse'" in order to enjoy full membership in the Church. (*Id.* at 3; *see also id.* ¶¶ 11-12.) He alleges "[t]he Temple Recommend question requiring the compliance [with] specific court orders that deny due process and equal protection of law demonstrates an inappropriate relationship between church and state and demonstrates an inadequate forum administered by the Utah Court System." (*Id.* ¶ 37.)

Mr. Headman seeks "injunctive and declaratory relief and punitive damages," citing the "5th, 7th, 8th, and 14th amendments of the Constitution," as well as the First Amendment's Establishment Clause. (*Id.* at 5; *see also id.* ¶ 35.) Specifically, Mr. Headman seeks injunctions requiring Mr. Nelson and/or the Church to:

- "[r]emov[e] references suggesting compliance [with] court orders . . . from Temple Recommend questions," (*id.* ¶ 40);

- "[r]emove the former Utah Supreme Court Justice Dallin H. Oaks from a position of influence within the LDS Church," (*id.* ¶ 42);

- issue various "Church-wide communication[s]" informing members of changes to Church requirements as suggested by Mr. Headman, (*id.* ¶¶ 43–44); and

- "commit to fully funding a non-profit organization[] led by the Plaintiff for the purpose of restoring justice to victims of acts of fault within Utah for a 10-year period," (*id.* ¶ 51; *see also id.*, Prayer for Relief ¶ C).

Mr. Headman also seeks an injunction allowing him to practice law in Utah for ten years without meeting state law license requirements. (*Id.* ¶ 54 & Prayer for Relief ¶ D.) Finally, he seeks declarations stating that he and other Utah citizens have a "right to have the facts of their case revisited" and "reconsideration of any orders" based on the alleged relationship between the Utah court system and the Church. (*Id.* ¶¶ 46, 56 & Prayer for Relief ¶¶ B, E.)

## LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and further provides that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). At minimum, the plaintiff must "explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed

3

him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss, the court accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). But the court need not accept the plaintiff's conclusory allegations as true. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Twombly*, 550 U.S. at 555). A complaint survives a motion to dismiss only if it states a plausible claim for relief, although courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.* at 1214–15.

Because Mr. Headman proceeds pro se, his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Hall*, 935 F.2d at 1110. Still, a pro se plaintiff must "'follow the same rules of procedure that govern other litigants.'" *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v.*

*Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Thus, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"  *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting *Hall*, 935 F.2d at 1110).  While the court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]" *Hall*, 935 F.2d at 1110, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf," *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal quotation marks omitted).

## DISCUSSION

Mr. Nelson contends Mr. Headman's complaint fails to state a claim upon which relief can be granted because (1) his claims seeking federal review of state-court orders are barred under the *Rooker-Feldman* doctrine; (2) his constitutional claims fail because Mr. Nelson is not a state actor; (3) his claims related to Church doctrine and governance are barred by First Amendment constraints; and (4) and his complaint fails to comply with Rule 8's pleading requirements.[3]  (Mot. to Dismiss ("Mot") 6–11, Doc. No. 11; Reply Mem. Supporting Mot. to Dismiss ("Reply") 2–4, Doc. No. 17.)  The court addresses each of these arguments below.

---

[3] Mr. Nelson attaches records from Mr. Headman's state-court divorce case as exhibits in support of the motion to dismiss, arguing the records may be considered as "documents incorporated into the complaint by reference."  (Mot. 2 n.1, Doc. No. 11 (internal quotation marks omitted); *see also* Exs. A–C to Mot., Doc. Nos. 11-1–11-3).  Because consideration of these documents is unnecessary in order to rule on the motion to dismiss, the court considers only the allegations in Mr. Headman's Complaint.

### A. Claims for Reconsideration of State-Court Orders

The *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Put differently, "[t]he losing party in a state court proceeding is generally 'barred from seeking what in substance would be appellate review of the state-court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Bisbee v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001) (unpublished) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

In *Bolden v. City of Topeka*, the Tenth Circuit offered the following illustration, which parallels Mr. Headman's claims:

> [S]ay a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker-Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings.

441 F.3d 1129, 1145 (10th Cir. 2006).

Here, Mr. Headman seeks "declarations" from this court providing for reconsideration of Utah state-court orders due the alleged influence of the Church on the state-court system.  For example, Mr. Headman's Second Claim for Relief seeks "a declaration stating that the influence of the LDS Church within the Utah Legal System merits a reconsideration of any orders upon any Utah Citizen who can demonstrate that an act of fault occurred . . . ."  (Compl. ¶ 46, Doc. No. 1.)  Likewise, Mr. Headman's Fifth Claim for Relief seeks a declaration stating that "the

Plaintiff, or any other Citizen of the State of Utah . . . who has Prima Facie claims over an inappropriate separation of Church and State . . . has the right to have the facts of their case revisited under provisions of fraud upon the court." (*Id.* ¶ 56.)

With these claims, Mr. Headman asks this court to order the Utah state court to reopen and reconsider orders entered in state-court cases, including his own divorce case. Thus, these claims are, effectively, claims for appellate review of state-court judgments. As such, they are barred by the *Rooker-Feldman* doctrine. Moreover, Mr. Headman has failed to allege a plausible connection between the relief he requests and the named defendant in this case, Mr. Nelson. Mr. Headman's conclusory allegation that the Utah state courts are "jointly controlled by the Defendant" is not supported by specific factual allegations explaining how Mr. Nelson is responsible for the actions of the Utah state courts. Accordingly, in addition to being barred by the *Rooker-Feldman* doctrine, Mr. Headman's claims seeking reconsideration of state-court orders fail to state a plausible claim for relief against the named defendant, Mr. Nelson.

### B. Constitutional Claims

Citing 42 U.S.C. § 1983 and the First, Fifth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution, Mr. Headman asserts throughout his Complaint that his constitutional rights have been violated in Utah state-court proceedings. (Compl., Doc. No. 1, at 5; *see also id.* ¶ 34.)

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "For a deprivation of a constitutional right to be committed under color of law for purposes of § 1983, it 'must be caused by the exercise of some right or privilege created by the State or by a

rule of conduct imposed by the state or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Gross v. Samudio*, 630 F. App'x 772, 778 (10th Cir. 2015) (unpublished) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

Here, the only named defendant is Mr. Nelson, who is a private citizen and not a state official. "The Tenth Circuit has set forth four tests under which a private actor may be held accountable as a state actor for a constitutional deprivation: (1) the nexus test, (2) the public function test, (3) the joint action test, and (4) the symbiotic relationship test." *Id.* The only test appearing to be potentially applicable to Mr. Headman's claims is the "joint action test," which asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 779 (internal quotation marks omitted).

Mr. Headman contends Mr. Nelson "jointly controlled" the Utah state courts, which violated his constitutional rights. (Compl. ¶ 31, Doc. No. 1.) However, he offers no facts to support this claim, other than his allegation that various Utah Supreme Court justices are members of the Church. (*Id.* at 2.) These allegations are insufficient to show Mr. Nelson "acted in concert" with the Utah judiciary or was responsible in any way for the outcome of Mr. Headman's divorce case. With no basis to hold Mr. Nelson accountable as a state actor, Mr. Headman cannot maintain constitutional claims against Mr. Nelson.

### C. Claims Related to Church Doctrine and Governance

To the extent Mr. Headman's Complaint challenges the Church's internal doctrines and governance, these issues are not reviewable by this court. Courts have long recognized that churches have "autonomy in making decisions regarding their own internal affairs." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655 (10th Cir. 2002). "This church

autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity." *Id.*

In his opposition brief, Mr. Headman argues he is "not seeking to change any religious doctrines." (Mem. in Opp'n and Obj. to Mot. to Dismiss and Obj. to Order Denying Mot. to Consolidate as Moot 3, Doc. No. 13.) However, his Complaint specifically requests injunctions requiring the Church to change the wording of its "temple recommend" questions and to issue statements to its members regarding changes to Church requirements as suggested by Mr. Headman. (Compl. ¶¶ 40, 43–44, Doc. No. 1.) He also asks the court to order the Church to "[r]emove the former Utah Supreme Court Justice Dallin H. Oaks from a position of influence" within the Church. (*Id.* ¶ 42.) These are clearly "matters of faith, doctrine, church governance, and polity" which this court may not review. *Bryce*, 289 F.3d at 655. Therefore, Mr. Headman's challenges to the "temple recommend" questions and other matters of Church doctrine and governance fail to state a claim upon which relief can be granted.

### D.  Other Requests for Relief

Mr. Headman makes several other requests for relief, including requesting that the Church fund a non-profit organization led by him and that he be allowed to practice law in Utah for ten years without meeting state licensing requirements. (Compl. ¶¶ 51, 54 & Prayer for Relief ¶¶ C, D, Doc. No. 1.) The court can conceive of no cognizable claim entitling Mr. Headman to the relief requested. Accordingly, these requests fail to state a plausible claim upon which relief can be granted.

### E.  Conclusion

In sum, none of the allegations in Mr. Headman's Complaint state a plausible claim for relief against the named defendant, Mr. Nelson. Mr. Headman's Complaint also fails to comply

with Rule 8's pleading requirements because it does not recite any action taken by Mr. Nelson, in particular, which has harmed Mr. Headman or violated his legal rights. For these reasons, Mr. Headman's Complaint should be dismissed.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned RECOMMENDS the district judge GRANT the Motion to Dismiss (Doc. No. 11) and DISMISS Mr. Headman's claims against Mr. Nelson (*see* Doc. No. 1). The undersigned further RECOMMENDS the district judge dismiss the claims with prejudice. *See Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (indicating dismissal of pro se plaintiff's claims with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." (internal quotations omitted)).

The court will send copies of this Report and Recommendation to all parties, who the court hereby notifies of their right to object to the same. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof. *Id.* Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of November, 2020.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge